**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID WILSON,<br><br>          Plaintiff,<br><br>     v.<br><br>BERGEN COUNTY N.J. SHERIFFS OFFICE, et al.,<br><br>          Defendants. | Civil Action<br>No. 22cv5272 (EP) (CLW)<br><br><br>**OPINION** |

**PADIN, District Judge.**

Pro se Plaintiff David Wilson, a state prisoner in Northern State Prison, New Jersey, is proceeding on a second amended complaint alleging various constitutional violations pursuant to 42 U.S.C. § 1983 stemming from time in the Bergen County Jail ("Jail"). D.E. 11. Defendants are various Bergen County officials or entities. Because Plaintiff has been granted *in forma pauperis* ("IFP") status, the Court must review the second amended complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). Plaintiff also moves for the appointment of pro bono counsel. D.E. 9. For the reasons below, the Court will permit the second amended complaint to proceed in part. The Court will also deny the motion for counsel without prejudice.

## I.     BACKGROUND

Plaintiff filed his original complaint on August 26, 2022. D.E. 1. He submitted an amended complaint on October 6, 2022. D.E. 3. On December 8, 2022, he moved to amend the

complaint a second time.  D.E. 8.  He also moved for the appointment of pro bono counsel.  D.E. 9.  The Court granted Plaintiff's second motion to amend and directed the Clerk to file the second amended complaint on March 28, 2023.  D.E. 10.

## II.   LEGAL STANDARDS

To survive a *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the Plaintiff's claims are facially plausible.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In determining a *pro se* complaint's sufficiency, the Court must construe it liberally in favor of the plaintiff.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

## III.   ANALYSIS

### A.    Count One - Denial of Reasonable Due Care/ Hazardous Housing Conditions

Plaintiff's first claim alleges Defendants "wantonly failed to provide plaintiff Wilson with reasonable care to protect him from dangerous confinement conditions during the covid-19

pandemic while as a detainee and after being convicted awaiting transfer to state Prison."  D.E. 11 at 3.

Plaintiff alleges he was transferred to the Jail in May 2021.  *Id.*  Plaintiff alleges that "between May 2021 and Feb 2022 . . . the named defendants wantonly failed to provide plaintiff Wilson with reasonable care to protect him from dangerous confinement conditions during the COVID-19 pandemic while as a detainee and after being convicted awaiting transfer to state Prison."  *Id.*  Plaintiff has underlying medical conditions, including a brain injury, high blood pressure, respiratory problems, and anxiety.  *Id.*  Plaintiff's breathing pump was taken away from him upon arriving at the Jail.  *Id.*  Plaintiff "filed several grievances to defendant Russo complaining but, got no response due to the defendant's unavailable grievance process."  *Id.* 3-4.

"[O]n or about Dec. 25-27, 2021" an inmate in Plaintiff's housing unit became ill and went to the Jail's Medical Department.  *Id.* at 4.  According to Plaintiff, Defendant Nurse Jane Doe sent the inmate back to the housing unit despite his temperature being "99 to 100."  *Id.*  Defendant Nurse Doe did not test the inmate for COVID-19 before sending him back to the unit.  *Id.*  Plaintiff started feeling ill a few days later.  *Id.*  "[A]fter a 30 minute battle with the Jane Doe nurse over the phone, [Defendant] housing officer John Doe number #1 told Wilson to go to medical; Where he was seen by a defendant Jane Doe nurse, wantonly medically treated by her, where plaintiff Wilson explain [sic] to her that he was having problems breathing but, she just ignored plaintiff Wilson and sent [him] back to the housing unit south-2."  *Id.*

While Plaintiff was in the medical unit, Plaintiff told "Dr. Hemsley and nurse Jane Doe that, he felt like he had COVID-19, to please give him the rapid test and the defendant's Jane Doe nurse and Dr. Hemsley consulted with each other aware of the virus spreading in the jail, wantonly ignore Wilson's request to be tested and disregard fully wantonly sent Wilson back to South-2."

*Id.* "The defendant's Dr. Hemsley and Jane Doe nurse and in concert were heedless, reckless and failed to properly follow policies, customs and protocols that were put in place by the defendants Bergen County Sheriffs office et. al. to combat the covid virus, when Wilson showed obvious symptoms for covid, on top of his underlying health conditions." *Id.* "[S]oon after visiting their jail medical dept., plaintiff Wilson filed several grievances to defendant Russo complaining about his underlying health conditions, calling for the need for a rapid covid test but, got no response." *Id.* at 5.

Plaintiff alleges that he began to feel worse on or around December 28, 2021, "throwing up showing all kinds of signs of covid and informed another housing officer John Doe number 2# on South-2 housing unit . . . who called medical for plaintiff Wilson for a second time but, this time with another inmate because they were both feeling sick showing symptoms of covid and needed to see medical." *Id.* "And after a 30 minutes of battling again with the nurse over the phone, the John Doe housing officer told plaintiff Wilson and the other inmate to go to medical, where they was both seen, wantonly treated by defendants nurse Jane Doe and Dr. Hemsley, and sent back to the housing unit south-2." *Id.* According to Plaintiff, "Jane Doe nurse and Dr. Hemsley clearly ignored the CDC guide lines and refused to take precaution by removing the plaintiff Wilson off South-2 and quarantining him." *Id.* Plaintiff eventually received a COVID-19 test, tested positive, and was placed into quarantine. *Id.*

"In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty." *Hope v. Warden York County Prison*, 972 F.3d 310, 325 (3d Cir. 2020). "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229,

231 (3d Cir. 2008) ("*Hubbard II*")). "'[T]he ultimate question' is whether conditions are 'reasonably related to a legitimate governmental objective.'" *Id.* (quoting *Hubbard II*, 538 F.3d at 236) (alteration in original).  If detainees "are subject to conditions unrelated to a legitimate governmental objective, 'we may infer "that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees qua detainees."'" *Id.* (quoting *E. D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019); *Hubbard II*, 538 F.3d at 232).  Courts must "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* (citing *Hubbard v. Taylor*, 399 F.3d 150, 159-60 (3d Cir. 2005) ("*Hubbard I*")).

"[T]o the extent [Plaintiff] makes general claims that his constitutional rights were violated merely by having been exposed to the virus, or by an increased risk of exposure to the virus, the allegations are insufficient." *Graham v. Aviles*, No. 22-5760, 2022 WL 16949131, at *4 (D.N.J. Nov. 14, 2022).  "Exposure alone does not establish a constitutional violation and [Plaintiff's] complaint, as drafted, does not establish that his conditions of confinement amounted to unconstitutional punishment rather than good faith efforts to reduce the spread of COVID." *Id.* (citing *Hope*, 972 F.3d at 329-30).  "'[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).  Nothing in the second amended complaint reaches this standard.

The Court further concludes that Plaintiff has not stated a denial of medical care claim in violation of either the Eighth or Fourteenth Amendments.  Claims by pretrial detainees for failing to provide adequate medical care arise under the Fourteenth Amendment Due Process Clause and are analyzed "under the standard used to evaluate similar claims brought under the Eighth Amendment[.]"  *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  The Court will therefore review Plaintiff's claims regarding his pretrial detention under the same standard that is used to evaluate his post-conviction claims brought under the Eighth Amendment. *Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019).[1]

To state an Eighth Amendment Claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'"  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (alteration in original)). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it's so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003)).  The Court will presume that Plaintiff has alleged a serious medical need for screening purposes only.

The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from

---

[1] The Supreme Court has applied an "objectively unreasonable" standard to analyze an excessive force claim under the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). However, the Third Circuit has declined to address whether the "objectively unreasonable" standard applies to a deliberate indifference to medical need analysis. *Moore*, 767 F. App'x at 340 n.2.

receiving needed or recommended medical treatment.'" *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse*, 182 F.3d at 197). "Mere medical malpractice cannot give rise to a violation of the Eighth Amendment." *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990). Disagreements over medical judgment or treatment cannot form the basis of an Eighth Amendment claim. Plaintiff ultimately received a COVID-19 test and was placed into quarantine when it returned with a positive result. There are no facts in the second amended complaint from which the Court could reasonably infer that Defendants Hemsley and Jane Doe Nurse delayed treatment for non-medical reasons. *See Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346, (3d Cir. 1987) ("Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." (cleaned up)). *See also Robinson v. Bureau of Health Care Servs.*, No. 22-1913, 2022 WL 17984477, at *2 (3d Cir. Dec. 29, 2022) (affirming dismissal of plaintiff's "claims that the defendants were deliberately indifferent to any serious medical need, because, as he recounted, prison medical personnel addressed his health concerns and tested him for celiac disease"). Plaintiff's repeated use of the word "wantonly" does not satisfy the pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

Plaintiff also has not stated a claim against Defendant Russo. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Id.* at 676. "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)

(quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)) (alteration in original).  A supervisor may also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Id.*

Plaintiff names Russo as a defendant because he failed to respond to Plaintiff's grievances complaining about his lack of medical care.  "These types of allegations — *i.e.*, a claim that grievances were sent to a warden or other administrator after an alleged denial of care — are generally insufficient to establish supervisory liability, absent a plausible allegation that the supervisor had contemporaneous knowledge of the denial of care and either directed or acquiesced in it." *Graham v. Aviles*, No. 22-5760, 2022 WL 16949131, at *3 (D.N.J. Nov. 14, 2022)  (citing *Diaz v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (per curiam) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most, receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving")).  Plaintiff has not alleged such facts in the second amended complaint.[2]   To the extent Plaintiff later alleges that Defendant Russo "induced subordinates, and came to an agreement with his subordinates to stop covid testing, due to the exposure to the public, and in a[n] efforts to protect the Bergen County Jails reputation" and

_____

[2] Plaintiff may not maintain a claim for an allegedly unconstitutional grievance procedure because "prisoners do not have a constitutional right to prison grievance procedures."  *Spada v. Klemm*, No. 1:22-CV-00478, 2023 WL 2290258, at *8 (M.D. Pa. Feb. 28, 2023) (citing *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015) (unpublished) (explaining that "[a]ccess to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [Section] 1983" (citation omitted))).

created a policy or custom "prohibit[ing] subordinates under Russo's command from providing covid testing upon request of a[n] inmate," he has failed to state a claim because he has not alleged a nexus between the allegedly unconstitutional policies and customs and his injury. D.E. 11 at 8. Plaintiff alleges he contracted COVID-19 in December 2021. *Id.* at 5. Plaintiff alleges Defendant Russo enacted the challenged policies in January 2022. *Id.* at 8. Therefore, Plaintiff has not alleged a causal link between the challenged policies and his injuries. *See Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) ("A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries.").

The Court will dismiss Count One without prejudice.

### B.   Count Two – Failure to Protect, to Act and Train

Plaintiff's second cause of action challenges Bergen County's policy of accepting inmates from Passaic County, Jail officials' failure to protect him from COVID-19, and Bergen County's failure to train Jail staff.

A municipality may be liable under Section 1983 "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Township*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). A policy exists "when a decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (internal quotation and alteration omitted). A custom may be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* at 155-56 (internal quotation omitted).

For a policy or custom claim, in addition to pleading that a policy or custom inflicted the injury in question, a plaintiff must also allege that the policy or custom was the proximate cause of his injuries. *Est. of Roman*, 914 F.3d at 798. To do this, a plaintiff must demonstrate an "affirmative link" between the policy or custom and the particular constitutional violation he alleges, such as where the plaintiff shows that the municipality "had knowledge of similar unlawful conduct in the past, ... failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury." *Id.* (quotations and citation omitted).

Plaintiff alleges that "the Bergen County Jail Administration ran by defendant's County of Bergen, Russo, Cureton, Tanelli and the Bergen County Board of Commissioners in concert wantonly accepted inmates from Passaic County jail for money, which took up the bed-space in the jail to quarantine a[n] inmate if he caught covid, at the expense of the plaintiffs Wilson's constitutional rights." D.E. 11 at 5-6. Plaintiff alleges Defendants "in 2021 all met with each other in the County of Bergen, and went over plans that involved bringing inmates from Passaic County Jail to Bergen County Jail, during a pandemic for money and was aware of the obvious foreseeable covid virus injury plaintiff Wilson sustained and would sustain due to their disregardfulness of the pandemic consequences." *Id.* at 6. He alleges that Defendants County of Bergen, Tanelli, and the Bergen County Board of Commissioners "had actual knowledge of a potential danger of bringing inmates from Passaic County into Bergen County Jail while jails the ventilation system was broke down, that would highly subject Wilson to the exposure of the covid virus that ended up harming Wilson." *Id.* "The defendants also acknowledged from several past 2020-21 federal court cases for the jails neglect that, were lodged against the Bergen County jail for poor care of inmates during the covid pandemic that, common since [sic] would tell anyone that it was not a good time to bring Passaic County jail inmates into Bergen County jail." *Id.*

Plaintiff claims that Defendants Bergen County Board of Commissioners and Tanelli knew "that the jail was under staff before bringing Passaic County Jail inmates in to Bergen County Jail." *Id.* "Once the inmates from Passaic County Jail was brought to the Bergen County Jail, the Bergen County Jail became more under staffed and increased Wilson's chances of catching the covid virus and as a result he did catch it." *Id.* However, as discussed above, exposure or an increased risk of exposure "alone does not establish a constitutional violation." *Graham v. Aviles*, No. 22-5760, 2022 WL 16949131, at *4 (D.N.J. Nov. 14, 2022). "Here, Plaintiff fails to provide sufficient facts showing that the existing policies and/or practices . . . created an unreasonable risk of *constitutional injury to Plaintiff*, or that these Defendants were deliberately indifferent to the risk." *Abner v. Ellis*, No. 21-15359, 2022 WL 17177838, at *6 (D.N.J. Nov. 23, 2022) (emphasis in original). "[] *Monell* liability cannot lie where there is no underlying constitutional violation." *Id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Johnson v. City of Phila.*, 837 F.3d 343, 354 & n.58 (3d Cir. 2016)). As exposure or an increased risk of exposure is not a constitutional injury, Bergen County's policy of accepting Passaic County inmates into its Jail cannot have been deliberately indifferent to Plaintiff's constitutional rights.

Plaintiff's allegation that the policy of accepting inmates from Passaic County caused him to be denied mental health care also does not state a *Monell* claim. Plaintiff asserts that "[d]uring the months of November- December 2021 up until the second out break of the virus in the jail, Wilson's mental health counselor informed Wilson that she could not see him like she was seeing him over the year 2021, because of the case load she inherited due to Passaic county jail inmates being transferred to Bergen County jail." D.E. 11 at 9. He alleges that "catching covid in the Bergen County Jail triggered his mental health illness and cause him to mentally relapse and start having nightmares about a past accident again, on top of the fact that he lost his mother." *Id.*

There are not enough facts for the Court to reasonably infer that Plaintiff's unspecified "mental health illness" or nightmares would qualify as a "serious medical need." Nor does he sufficiently allege that he was denied necessary treatment for a non-medical reason, *i.e.,* because the Jail was understaffed. Plaintiff states that when he "made complaints about being neglected mental health treatment," the counselor told Plaintiff "that if he felt like he wanted to hurt his self to drop a sick call slip . . . ." *Id.* This indicates that Plaintiff would be able to obtain mental health treatment in the event of a true medical need. Denying Plaintiff necessary medical care because of staffing concerns would qualify as deliberate indifference, but the Court cannot plausibly infer that the understaffing caused Plaintiff to be denied necessary medical attention for a serious medical need without more facts. Accordingly, Plaintiff has not satisfactory alleged that Bergen County's policy directly caused a violation to Plaintiff's constitutional rights.

Plaintiff further claims in Count Two that Defendants failed to protect him from COVID-19. "[O]nce the defendant's Bergen County Sheriffs office, Warden Russo, Sheriff Cureton and the Board of Commissioners learned individually and in concert that the almost entire jail was under attack by the spread of the covid virus due to the subordinates wanton behavior, knowing the risk they still wantonly continued to bring inmates from Passaic County jail to Bergen County jail for money." D.E. 11 at 7. "That, as a result of the defendant's Bergen County Sheriff's office et. al. wantonness up to about 40 inmates became infected with covid-19 on South-2 alone where plaintiff Wilson was housed which lead to the entire south -2 housing being quarantined." *Id.* He asserts Defendant Russo created a policy in January 2022 that prohibited his subordinates from "providing covid testing upon request of a[n] inmate" because he "didn't want the public to learn of the new rising covid cases because, if they did the jail would have to go back on lock down." *Id.* at 8. "The defendants just stop testing period no matter if you had covid symptoms or not." *Id.*

These claims fail for the reasons discussed above, namely that the risk of increased exposure to COVID-19 is not in and of itself a constitutional violation, and the policies enacted in January 2022 could not have caused Plaintiff's illness because he contracted COVID-19 in December 2021. *Id.* at 5.

Plaintiff also alleges that Bergen County and the Board of Commissioners "acquiesced in their subordinates defendant's Russo, Cureton Dr. Hemsley, and John and Jane Doe's wanton behavior, stood by, watched and fail to provide, or encourage the level of training needed, or the providence of funding and care required by law, or to assure that their subordinates properly adhered to the covid New Jersey state CDC guidelines . . . ." *Id.* at 10.  "[] Bergen County jail does not have any specific protocols in place to protect medically-vulnerable people in the facility from covid-19 like the plaintiff Wilson, who suffers from a breathing disorder, respiratory problems, anxiety and high blood pressure." *Id.*  "[T]he jail also lacked available quick testing where they maliciously heedlessly, disregard fully refused to provide the rapid covid-19 test to assure the safety of the plaintiff Wilson in a timely fashion.  Where in this case the plaintiff Wilson had to wait up to about or more then [sic] '3 days' to take the covid test and up to '4 days to get a covid-19 test result." *Id.*  A § 1983 municipal liability claim may be premised on a municipality's failure to properly train, supervise, or discipline its employees.  *See Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation . . . under § 1983.").  However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

To plead such a claim, a plaintiff must provide facts that suggest the "city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman v. City of Newark*, 914

F.3d 789, 798 (3d Cir. 2019)  (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).  "A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (alterations in original)).  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410  (1997).  "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (cleaned up).  *See also Connick*, 563 U.S. at 61 ("[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.").

Plaintiff alleges "several past 2020-21 federal court cases for the jails" put Bergen County on notice of the poor conditions and "common since [sic] would tell anyone that it was not a good time to bring Passaic County jail inmates into Bergen County jail." D.E. 11 at 6.  He further claims Defendants Russo, Cureton, and the Board of Commissioners were aware of "the excessive risk their subordinates were exposing the plaintiff Wilson and others health safety to" through "video surveillance and after reading reports through out the year of 2021-2022" but "failed to take any kind of obvious needed action to protect, or any type of corrective action, like suggesting re-training their subordinates, by not even a mere suggestion specifically when they saw their

subordinates abandonment of the set in place CDC covid guide lines, which contributed to Wilson catching covid." *Id.* at 14.

Plaintiff does not elaborate on his claim that "a Federal District Court Judge deemed that Bergen County Jail was in violation for not providing a sufficient amount of cleaning supplies during the pandemic which created a dangerous jail environment," *id.* at 7, but the Court presumes he is referring to cases filed in this District by immigration detainees early in the pandemic. *See, e.g, Asmed B. v. Decker*, 460 F. Supp. 3d 519 (D.N.J. 2020); *Ousman D. v. Decker*, No. 20-2292, 2020 WL 1847704 (D.N.J. Apr. 13, 2020); *Cristian A.R. v. Decker*, 453 F. Supp. 3d 670 (D.N.J. 2020). These matters were habeas corpus proceedings under 28 U.S.C. § 2241, not civil rights complaints under § 1983. More significantly, these cases were decided before the Third Circuit issued its precedential decision in *Hope*. After *Hope*, "where the Government has taken concrete steps towards ameliorating the medical effects of COVID-19 on a detention facility, a detainee will fall 'well short of establishing that the Government was deliberately indifferent toward [his] medical needs' in light of the virus even though the Government cannot entirely 'eliminate all risk' of contracting COVID, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection should one occur." *Daniel W. A. v. Decker*, No. 20-8494, 2020 WL 6336182, at *3 (D.N.J. Oct. 29, 2020) (alteration in original) (quoting *Hope v. Warden York County Prison*, 972 F.3d 310, 330-31 (3d Cir. 2020)). *See also Khurram S. v. Warden, Bergen Cnty. Jail*, No. 20-14807, 2021 WL 1712299, at *5 (D.N.J. Apr. 30, 2021) ("Consequently, if the 'Government has taken concrete steps towards ameliorating the medical effects of COVID-19' a detainee cannot establish deliberate indifference to his medical needs."). Plaintiff concedes that Bergen County took some actions but asserts they were either not enough or were stopped too soon; these are the kind of administrative decisions to which the Court must defer after *Hope*. *See*

*Hope*, 972 F.3d at 330.  Therefore, Plaintiff has not alleged that Bergen County's failed to train its employees in a way that was deliberately indifferent to Plaintiff's constitutional rights.

The Court will dismiss Count Two without prejudice.

### C.      Count Three – Official Misconduct/Assault

Plaintiff alleges in Count Three of the second amended complaint that Defendants Russo and Cureton "actions stated in this complaint constitute Official Misconduct under N.J.S.A. 2C:30-2" because they "maliciously gave order and induced subordinates under their command to stop following the CDC guidelines . . . and their wanton actions contributed to the Plaintiff Wilson's getting sick with COVID and endangered his life with a deadly virus."  D.E. 11 at 15.  He further claims Defendants Russo, Cureton, and Hemsley "knowingly individually and inconcert [sic] maliciously allowed a deadly virus a avenue and easy access into the Bergen County Jail to harm Wilson."  *Id.*  Plaintiff also claims these actions "constitute an Assault under N.J.S.A. 2C:12-1 . . . ."  *Id.*

The state statutes cited by Plaintiff are part of the New Jersey criminal code.  "Plaintiff cannot bring criminal charges in this Court; that power lies solely with the executive branch." *Telfair v. Post*, No. 18-3842, 2018 WL 3054679, at *12 (D.N.J. June 20, 2018); *Lewis v. Sessions*, No. 17-5475, 2017 WL 7313822, at *1 (D.N.J. Nov. 3, 2017).  However, the Court will liberally construe the complaint to allege the state tort of assault.[3]  "An individual is liable for the common law tort of assault if (a) he acts intending to cause a harmful or offensive contact with the person, or an imminent apprehension of such a contact, and (b) the person is thereby put in such imminent apprehension."  *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 299 (D.N.J. 2015) (citing *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)).

---

[3] The Court would have supplemental jurisdiction over a state tort claim.  28 U.S.C. § 1367(a).

"Imminent apprehension is interpreted to mean that the person 'must believe that the act may result in imminent contact unless prevented from so resulting by the other's self-defensive action or by his flight or by the intervention of some outside force.'" *Ruiz v. New Jersey Dep't of Corr.*, No. 15-3304, 2020 WL 1130210, at *7 (D.N.J. Mar. 9, 2020) (quoting Restatement (Second) of Torts § 24).   There must be facts in the second amended complaint that plausibly suggest Plaintiff believed "the act is capable of *immediately* inflicting . . . contact upon him unless something further occurs."  Restatement (Second) of Torts § 24 (emphasis added).  Plaintiff bases his assault claim on Defendants' actions "during the periods of the years 2021-2022 . . . ."  D.E. 11 at 16.  Even construing the claims liberally, this wide range of time does not plausibly suggest Plaintiff believed immediate harm would occur.  The Court will dismiss Count Three without prejudice.

### D.   Count Four – Interfering with Access to the Courts/Invasion of Privacy/Mail Tampering

The second amended complaint's final claim alleges ongoing interference with his legal mail and his access to the Court.

"The Constitution permits prisons to restrict prisoners' right to send and receive mail for legitimate penological interests."  *Ali-X v. McKishen*, No. 12-3147, 2019 WL 6724309, at *2 (D.N.J. Dec. 10, 2019) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  However, "prisoners, by virtue of their incarceration, 'do not forfeit their First Amendment right to use of the mails,' and ... a 'pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech.'"  *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995)) (alteration in original).  Prisoners' legal mail is accorded heightened protection because "opening properly marked court mail ... chills protected expression and may inhibit the inmate's ability to

speak, protest, and complain openly, directly, and without reservation with the court." *Id.* at 358-59 (internal quotation marks omitted).  "Isolated incidents of interference with legal mail are not actionable under the First Amendment absent evidence of an improper motive or evidence of injury." *Ali-X*, 2019 WL 6724309, at *3 (citing *Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012)).  Prisoners need not establish an actual injury when such a pattern and practice of opening properly marked incoming legal mail outside an inmate's presence exists. *Jones*, 461 F.3d at 359-60.  *See also Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (per curiam).

Plaintiff alleges that Defendants opened legal mail outside of his presence throughout 2021 and 2022.  D.E. 11 at 16.   He states he "got legal mail from the Passaic County Sheriffs Office clearly identifiable as legal mail and the Bergen County Sheriff defendant's John Doe and John Doe staff assigned to the Bergen County Jail mail room . . . open[ed] and read[] the mail without plaintiff Wilson being present, and then sending plaintiff Wilson a photo copy of the mail and placing the original in plaintiff Wilson's property all captured on video surveillance." *Id.*  Plaintiff alleges that his legal mail continued to be opened and read outside of his presence.  *Id.*  Plaintiff further alleges the Sheriff's Office had a policy stating "the Bergen County Sheriffs office would hold on to incoming legal mail until they contact the court to make sure the court sent the mail as a security purpose." *Id.* at 20.  According to Plaintiff, this caused mail from his civil rights claim, *Wilson v. Straight and Narrow Drug Program, et al.*, No. 21-cv-18720 (D.N.J. dismissed Dec. 30, 2022), to be delayed or go missing.[4]  "The U.S. Dist. Court 'CLERK' informed Wilson over the phone that he acknowledged that Bergen County Jail has been recklessly handling the mail and

---

[4] Plaintiff cites the docket number as 21-cv-18721, but that number belongs to *Dawson v. Cumberland County Department of Corrections* in the Camden Vicinage.

that they would send Wilson the mail he never got . . . ." *Id.* at 21.  He also alleges he called the "U.S. Dist. Court clerk on Feb. 9, 2022 and ask[ed] the clerk did anyone ever call them from Bergen County Sheriffs office about any mail sent to plaintiff Wilson from the U.S. Dist. Court and the clerks response was no." *Id.*  Plaintiff also alleges the clerk informed him that no one had ever called the Clerk's Office to verify that the Court had sent mail to Plaintiff.  *Id.*  Construing the complaint liberally and giving Plaintiff the benefit of all reasonable inferences, Plaintiff has alleged interference with mail claims against Defendants Russo, Cureton, John and Jane Doe Mail Room Staff and Bergen County Sheriff's Department.

The Court will also permit failure to intervene and failure to train claims to proceed against Defendants Russo, Cureton, John Doe Mail Room Supervisor, and Bergen County Sheriff's Department.  "Wilson put in a grievance to warden Russo and his response was a negative, indicating that the mail room did nothing wrong and decline[d] to take any corrective action or discipline the John Doe Bergen County employee who committed the legal mail violation." D.E. 11 at 16.  *See Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011) (reversing grant of summary judgment to supervisors as a reasonable factfinder could find they had knowledge of and acquiesced in a practice of opening legal mail outside of an inmate's presence based on receipt and response to grievances).  He alleges that he "had to give his mail to a non mail jail trained Bergen County Jail employee name[d] Jesus who is not a defendant in this matter or a trained mail room employee to send out for him. . . . If Bergen County Staff Jesus is not available the legal mail will not go out." D.E. 11 at 18.  Plaintiff has plausibly alleged that Defendants were notified of a problem with Plaintiff's legal mail but failed to take steps to prevent future incidents. *Id.*  (alleging "[n]o training was provided to anyone handling mail outside the mail room.").  *See also id.* at 19 (alleging he filed "numerous grievances" with Russo and Cureton).  Construing the complaint

liberally, Plaintiff has also alleged that Defendants falsely told him that legal mail could not be given to him until the Sheriff's Office called the Court and verified it was the sender of the mail. *See id.* at 20 ("The jails policy/custom that the Bergen County Sheriffs office would hold on to incoming legal mail until they contact the court to make sure the court sent the mail as a security purpose, is not in their new rule book dated Feb. 2, 2022.").

The Court will dismiss the *Monell* claim against the Bergen County Board of Commissioners.  Plaintiff alleges "the moving force here is the defendant Bergen County Sheriffs office mail policies."  *Id.* at 22.  He then states "the defendants Bergen County Board of Commissioners are responsible and connected to the wanton hand book and wanton mail room policies and acquiesced in it's subordinates unlawful behavior instead of correction action." *Id.* at 23.  "The after having constructive knowledge Bergen County Board of Commissioners members turned a blind eye to an obviously inadequate practices and abuse of policies stated in this complaint."  *Id.*  This conclusory recitation of the elements is not enough to state a claim for municipal liability.

The Court will also dismiss Plaintiff's access to the court claim.  Unlike a claim based on interfering with legal mail, "[t]o allege an access-to-the-courts claim, a prisoner is required to show that the denial of access caused actual injury.  An actual injury occurs when a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts." *Conrad v. De Lasalle*, No. 21-8462, 2021 WL 4593273, at *4 (D.N.J. Oct. 6, 2021) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam)).  "[P]risoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim

well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"
*Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (quoting *Christopher*, 536 U.S. at 416-17).

Plaintiff alleges Defendant Bergen County Sheriff's Office withheld mail addressed to him from the Clerk's Office in January and February 2022 for his civil rights claim that "interfere[ed] with time goals that have to be met in the federal court in response to orders of a federal court judge in the plaintiff Wilson civil pending case." D.E. 11 at 18.  On September 13, 2022, the Honorable Madeline Cox Arleo, D.N.J, dismissed that complaint without prejudice under Federal Rule of Civil Procedure 12(b)(6) because the Straight and Narrow Drug Program is not a "person" subject to suit under § 1983.  *Wilson*, No. 21-cv-18720 D.E. 50.[5]  Plaintiff was permitted to file an amended complaint within 30 days.  *Id*.  Plaintiff received a copy of that Order via certified mail on November 7, 2022.  *Wilson*, No. 21-cv-18720 D.E. 53.  Plaintiff did not file an amended complaint, so Judge Arleo dismissed the complaint with prejudice on December 30, 2022.  *Wilson*, No. 21-cv-18720 D.E. 54.  It was Plaintiff's failure to submit an amended complaint that caused his case to be dismissed with prejudice, not because of any delay in Plaintiff receiving mail from the Court.  Accordingly, Plaintiff has failed to allege an access to the courts claim.

### E.    Summary

The Court will allow Count Four to proceed against Defendants Russo, Cureton, John and Jane Doe Mail Room Staff and the Bergen County Sheriff's Department for interference with legal mail and against Defendants Russo, Cureton, John Doe Mail Room Supervisor, and Bergen County Sheriff's Department for failure to intervene and failure to train.  The Court will dismiss the remainder of the second amended complaint without prejudice.  28 U.S.C. § 1915(e)(2)(B)(ii).

---

[5] The Court takes judicial notice of the filings on the public docket.  *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

### F.      Motion for Counsel

Plaintiff also moves for the appointment of pro bono counsel.  D.E. 9, 13.  Appointment of counsel is a privilege, not a statutory or constitutional right, *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011), and is governed by the factors enumerated in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993).  In determining whether to appoint counsel, "the district court must consider as a threshold matter the merits of the plaintiff's claim."  *Tabron*, 6 F.3d at 155.  The Court is proceeding Plaintiff's legal mail claims; therefore, the second amended complaint satisfies this threshold inquiry.

The Court must now consider: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  *See id.* at 155-56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the *Tabron* factors).  The Court concludes that the *Tabron* factors weigh against appointing counsel at this time; therefore, the Court will deny the motion for counsel.

Plaintiff argues he cannot litigate his case by himself because of health problems.  "I suffer from anxiety and PTSD and my disability could put my case in danger."  D.E. 13 at 4.  He also states he suffers from asthma and mental health problems.  *Id.*  Plaintiff has presented his case in a coherent, knowledgeable manner thus far.  He has filed two successful motions to amend his complaint, demonstrating familiarity with Court rules, and there is no indication that Plaintiff's health problems have hindered his ability to prosecute this matter.  The first factor weighs against appointing counsel.

The second, third, fourth, and fifth factors also weigh against the appointment of counsel. Plaintiff asserts counsel is warranted because "my case is dealing with me being sick with the COVID virus.  I'm going to be need [sic] access to a lot of confidential documents, expert witnesses and evidence I'm not allowed to have or see." D.E. 9 at 3.  *See also* D.E. 13 at 4 ("I need a lawyer to get the correct amount of covid case in B-C-5.  The covid virus is something most lawyers have not dealt with yet.").  The Court has dismissed Plaintiff's COVID-related claims; only his legal mail claims are proceeding.  Plaintiff's legal mail claims do not appear to be especially complex.  Some discovery will be necessary, but Plaintiff has not pointed to any difficulties in conducting discovery beyond the hurdles faced by all pro se prisoner plaintiffs.  *See* D.E. 13 at 4 ("This case requires foot work I'm not capable of due to incarceration.").  The grievances submitted by Plaintiff will be relevant to his claims that he alerted Defendants to the problems with his legal mail, meaning the case would not be "solely a swearing contest." *Parham v. Johnson*, 126 F.3d 454, 460 (3d Cir. 1997).  It does not appear from the second amended complaint that expert testimony would be needed.

As Plaintiff is proceeding *in forma pauperis*, the Court accepts that he cannot afford counsel on his own.  Although the sixth factor weighs slightly in favor of appointing counsel, the other factors heavily outweigh it.  The Court will deny the motion, but Plaintiff may reapply for counsel if circumstances change.

## IV.   CONCLUSION

For the reasons stated above, the Court will allow Plaintiff's legal mail claims to proceed but dismiss the other claims in the second amended complaint.  The Court will deny the motion for counsel without prejudice.

An accompanying Order will be entered.

__**5/15/2023**_____
Date

Evelyn Padin, U.S.D.J.